O'BRYAN BROTHERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

T. P. KENNEDY, SR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 83382, 90681. Promulgated June 11, 1940.

*Cecil Sims, Esq.,* and *T. W. Branch, C. P. A.,* for the petitioners.
*F. L. VanHaaften, Esq.,* for the respondent.

20

22

24

## OPINION.

ARNOLD: The first issue is whether respondent erred in disallowing the deduction of $138,567.20 claimed by the corporate petitioner as that portion of a debt ascertained to be worthless and charged off during the taxable year. O'Bryan Brothers determined the worthless portion of the indebtedness by valuing the remaining collateral that secured the Kennedy note at the time Kennedy, Sr., transferred 751 shares of stock to his son. There is no dispute between the parties with respect to the charge-off on petitioner's books, so that the issue is reduced to a question of whether the facts establish a sufficient ascertainment of worthlessness.

The respondent contends that the disallowance of the deduction was proper because (1) the withdrawals represented in the Kennedy account were in the nature of dividends and accordingly should be charged to surplus; (2) the Kennedy accounts were not ascertained to be worthless in the year 1933 even in part; and (3) the charge-off

by O'Bryan Brothers was in the nature of a forgiveness of indebtedness and should have been charged to surplus.

Briefly, the facts show that prior to the taxable year the corporate petitioner had sustained losses and its principal creditor, a Nashville bank, had assumed supervision of its affairs in order to work out the indebtedness owing to the bank. One of the principal assets of O'Bryan Brothers was an open account with its majority stockholder, who had withdrawn over $200,000 from the corporation during the years 1925 to 1932, inclusive. Upon the insistence of the bank the majority stockholder executed a promissory note in favor of the corporate petitioner and pledged his 1,308 shares of corporate stock and a deed of trust on his home as security for the note. O'Bryan Brothers then pledged the note and the security with the bank as collateral for its own indebtedness. The bank officials placed the son of the majority stockholder in charge of the corporate petitioner and directed the affairs of O'Bryan Brothers through this nominee of the bank. Kennedy, Sr., remained as chairman of the board of directors but confined his activities to selling.

In order to retain young Kennedy's services the bank proposed that Kennedy, Sr., transfer 751 shares of his stock to his son so that the latter would have an incentive to work the corporate petitioner out of its financial difficulties. The elder Kennedy consented to the proposal and the bank and the corporate petitioner successively released the 751 shares as collateral so that the elder Kennedy could effect the transfer of stock control to his son. The delivery of said shares occurred on June 5, 1933, and it is this transfer, together with the physical and financial condition of Kennedy, Sr., and the financial condition of O'Bryan Brothers, which petitioner says establishes the partial worthlessness of the elder Kennedy's debt.

While there may be merit in respondent's contention that the withdrawals by Kennedy, Sr., were in the nature of dividends, we prefer to dispose of the issue upon the assumption that an indebtedness existed. The fact that O'Bryan Brothers voluntarily relinquished collateral securing the indebtedness, thereby contributing to the partial worthlessness thereof, is, in our opinion, the critical factor herein. A taxpayer is not permitted voluntarily to surrender property which concededly is valuable and which was given for the purpose of protecting it from loss on an indebtedness, and then charge off the debt, *Gilliam Manufacturing Co.*, 1 B. T. A. 967, 971. Such action would amount to a perversion of the statute. *W. F. Taylor Co.*, 38 B. T. A. 551, 557. We can not, therefore, agree that the transfer of the 751 shares on June 5, 1933, coupled with the financial and physical condition of T. P. Kennedy, Sr., established the partial worthlessness of any part of the indebtedness.

Our findings show that the corporate petitioner fixed the value of the 557 shares at $35,000, or approximately $62.81 per share. This valuation, if correct and if applied to the entire 1,308 shares, plus the appraised value of the real property, might entitle petitioner to a smaller deduction than that claimed. For the purpose of determining the gift tax liability of the individual petitioner, respondent fixed the value of each share of stock given to T. P. Kennedy, Jr., at $150 per share. If respondent's valuation is correct the value of the collateral held by O'Bryan Brothers prior to the relinquishment of a portion thereof exceeded the amount of the indebtedness. The value of O'Bryan Brothers' stock, therefore, is one of the determining factors as to two of the issues presented.

The evidence of value is conflicting. We have the testimony of Kennedy, Jr., that the stock had no market value when given to him, and yet the corporate petitioner valued the stock at approximately $62.81 per share in fixing the amount of deduction it would claim. We have evidence that O'Bryan Brothers was being operated under the direction of its principal creditor; opposed to this is other evidence which shows that its earnings for the taxable year amounted to $54.82 per common share, if preferred stock and the deduction claimed are not taken into consideration. The balance sheets of the corporation for 1931, 1932, and 1933 indicate that the stock had substantial book values of $159.27, $166.25, and $128.95 per common share, respectively. The asset values on O'Bryan Brothers' balance sheets fail to reflect the evident value of its trademark and good will as indicated by the company's dividend record and the net withdrawals of its principal stockholder. A small corporation like O'Bryan Brothers must have a substantial earning power to pay its majority stockholder a salary and bonus of $35,000 per year, permit him to make net withdrawals of $19,945.57 for 1925, $43,128.58 for 1926, $24,801.66 for 1927, $46,398.45 for 1928, $57,440.61 for 1929, and $12,063.42 for 1930, and in addition pay dividends of 8 percent on its preferred stock and 5 or 10 percent on its common stock for most of these years.

More favorable to petitioners is the known economic condition of the country in 1932 and 1933, but in spite of economic conditions generally, the record shows that particular events favored O'Bryan Brothers in 1933. Furthermore, it was testified that its operations were profitable until its employees struck in September, and yet, despite the economic loss that usually results from a strike, O'Bryan Brothers was able to finish the year with earnings of more than $82,000, omitting from consideration the bad debt deduction.

In view of all the facts and circumstances herein, we are of the opinion that the value of the common stock of O'Bryan Brothers was

$150 per share; that the collateral securing the indebtedness, together with the collateral surrendered, exceeded in value the amount of the elder Kennedy's indebtedness; and that no part of said indebtedness was properly ascertained to be worthless. On this issue decision will be for the respondent.

The second issue involves respondent's determination of the amount of depreciation to which the corporate petitioner is entitled. No evidence was offered by petitioner, but it contends that as a matter of law respondent erred in his determination. The deficiency letter and the statement and depreciation schedules attached thereto indicate that respondent determined as a matter of fact that the life of petitioner's factory equipment and of its furniture and fixtures was 15 and 20 years, respectively, and not 10 and 15 years, respectively, as originally determined by petitioner and accepted by the respondent. Respondent, therefore, determined new rates for these depreciable assets based upon their longer useful life, and depreciated the remaining cost thereof over their remaining life, beginning with the taxable year. Petitioner agrees with respondent's determination of fact, namely, a longer useful life for these assets, but asks the Board to require respondent to make his determination retroactive to January 1, 1930. This we can not do unless petitioner shows that 1933 income would somehow be affected, such as by net losses sustained in prior years; *Sample-Durick Co.*, 35 B. T. A. 1186. But the record here shows that this petitioner had taxable income for 1932, and that it has offered no evidence to overcome respondent's determination of a question of fact. The respondent's determination must, therefore, be approved on this issue.

As to the third issue, petitioner T. P. Kennedy, Sr., contends that the proper date for filing his gift tax return was June 15, 1934, the date of its receipt by the revenue agent in charge, and accordingly that the statute of limitations has run against the collection of the tax. The respondent contends that the gift tax return was filed August 7, 1934, when it was received by the collector of internal revenue for the district of Tennessee, and therefore the statute of limitations has not run against the collection of the tax. In support of this contention respondent relies on the case of *Hill Co.* v. *Commissioner*, 64 Fed. (2d) 506; certiorari denied, 290 U. S. 691, affirming 22 B. T. A. 1351, wherein it is stated:

The first contention made by the petitioner is that the statute of limitations has operated to bar the assessment and collection of the deficiency found to be due for the fiscal year ended March 31, 1920. The petitioner contends that a return for this fiscal year was executed by the officers of the petitioner and delivered to the revenue agent at his request; that he promised to file the return, and that the execution and lodgment of the return with the revenue

agent meets the requirements of the statute. There is no merit in this contention. Under the heading "Time and place for Filing Returns" section 241 (b) of the Revenue Act of 1918 provides:

> Returns shall be made to the collector of the district in which is located the principal place of business or principal office or agency of the corporation, or, if it has no principal place of business or principal office or agency in the United States, then to the collector at Baltimore, Maryland.

It is no part of the duties of an internal revenue agent or of an internal revenue agent in charge to file returns for taxpayers. That is the duty which law places on the shoulders of the taxpayers. * * *

Section 507 (b) of the Revenue Act of 1932 is to the same effect as section 241 (b) of the 1918 Act mentioned above. Upon authority of *Hill Co.* v. *Commissioner*, *supra*, the contention of the respondent in respect to this issue is sustained.

As to the fourth and last issue presented for determination, petitioner T. P. Kennedy, Sr., contends that respondent erred in placing a value of $150 per share on 751 shares of stock of O'Bryan Brothers as of June 5, 1933, the date of the gift of the stock to his son, T. P. Kennedy, Jr. In view of our decision on the first and third issues it is unnecessary to further consider the value of O'Bryan Brothers common stock in determining the gift tax liability of T. P. Kennedy, Sr., since he does not dispute the making of the gift to his son, and the only question raised is the value of the gift. Respondent's determination on this issue is approved.

Since the petitioner, O'Bryan Brothers, has paid the collector of internal revenue at Nashville, Tennessee, $1,941.30 on its income and excess profits tax liability for the calendar year 1933, it is entitled to credit for this payment in the recomputation of its taxes for that year.

*Decision will be entered under Rule 50.*